Jerry HOAGLAND, Appellant,

v.

Roger C. FINHOLT, Appellee.

No. 05–87–00128–CV.

Court of Appeals of Texas, Dallas.

June 21, 1989.

Rehearing Denied July 26, 1989.

Ronald J. McKinney, Dallas, for appellant.

James R. Guittard, Dallas, for appellee.

Before ENOCH, C.J., and HOWELL and OVARD, JJ.

HOWELL, Justice.

This suit arises from a mutual endeavor of plaintiff Roger Finholt and defendant Jerry Hoagland to acquire a ninety-six-acre tract of land and develop a mobile home park. The parties either formed or attempted to form a limited partnership for this purpose. In a declaratory judgment action by the putative general partner, Roger Finholt (GP), against the putative limited partner, Jerry Hoagland (LP), the trial court held that no limited partnership was ever formed in accordance with applicable law.[1] From this premise, the court went on to hold that all of the assets of the endeavor thereby became the assets of GP. We disagree with this final conclusion; therefore, we reverse and remand.

At the outset, LP either owned or had control over the disposition of the entire ninety-six acres. He met GP and, after a period of discussion and negotiation, the parties agreed to form a limited partnership to be known as CC Development Limited No. 1 (Partnership).[2] A sixteen-page limited partnership agreement was prepared (ironically by LP's attorney) and signed by both parties. The only recited purpose was to acquire and develop the ninety-six-acre tract. The agreement provided that all profits would be divided seventy-five percent to GP and twenty-five percent to LP. For initial capital, the agreement called for GP to contribute the total sum of $250. Insofar as LP was concerned, the agreement provided that his initial contribution would be "$–0–(0%)." Although GP *could* contribute additional sums, the agreement rendered it altogether infeasible for him to do so because it expressly stipulated that any further contributions by GP would not increase his ownership share.

Promptly thereafter, GP executed the statutory partnership certificate on behalf of Partnership and it was filed with the Secretary of State. In a reverse twist of irony, GP, as attorney-in-fact for LP, signed and certified for the public record that LP would contribute "0" and would receive, in return, twenty-five percent of the profits.

Contemporaneously with its organization, Partnership, acting through GP, entered into two real estate purchase contracts to acquire the ninety-six acres in two parcels—one of approximately sixty-two

---

1. The trial court also held that LP should take nothing upon his counterclaim seeking dissolution and accounting with regard to the limited partnership.

2. This is a summary judgment appeal. In accordance with the authorities cited and discussed herein, we state the facts in the light most favorable to the non-movant, LP. The facts stated herein will not necessarily be those found through a trial on the merits.

acres and one of thirty-four acres. The total purchase price was $1,052,174.50, quite a handsome undertaking for a new business concern with only $250 in capital. Obviously, additional sums would be required for development costs. In fact, the initial capital was manifestly inadequate to even pay carrying costs. We speak an obvious truth when we conclude that it was within the contemplation of the parties, from the outset, to sustain the venture virtually entirely with borrowed funds.

Partnership managed to acquire sufficient financing to complete the purchase of one parcel; the other parcel was never acquired. GP contended that LP agreed to assist Partnership to secure financing for the second parcel and failed to produce any results. LP contended in return that he was instrumental in obtaining rezoning, which permitted the desired use of the land as a mobile home park, and that he thereby made a valuable contribution to the venture. LP further contended that he arranged the successful purchase by Partnership of the first parcel (in which LP had indirectly owned an undivided share) for a sum approximately $180,000 below fair market value.

After about one year, the project was moving slowly, if at all, and LP, through his attorney, demanded an accounting. GP responded with this lawsuit seeking declaratory judgment that the attempted limited partnership was a nullity and that GP was therefore the sole owner of all property of the endeavor. By summary judgment, the trial court sustained GP in his position. We conclude that the trial court erred; we reverse for further proceedings.

### STANDARD OF REVIEW

Summary judgment is proper when the summary judgment proof shows that no genuine issue of material fact exists and that movant is entitled to judgment as a matter of law. *See Nixon v. Mr. Property*

*Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 679 (Tex.1979). All doubts as to a material issue of fact must be resolved against the movant, and all evidence favorable to the nonmovant will be taken as true in deciding whether a fact issue precludes summary judgment. *See El Chico Corp. v. Poole,* 732 S.W.2d 306, 315 (Tex.1987); *First Nat'l Bank of Libby, Montana v. Rector,* 710 S.W.2d 100, 103 (Tex.App.—Austin 1986, writ ref'd n.r.e.). The appellate court must indulge every reasonable inference in the nonmovant's favor. *Sabine Pilot Service, Inc. v. Hauck,* 687 S.W.2d 733, 734 (Tex.1985). We must accept the evidence tendered by the nonmovant LP, insofar as it has not been controverted, as a matter of law, by the summary judgment evidence tendered by GP.

### PURPORTED LIMITED PARTNERSHIP

■ The parties have devoted the main force of their argument to the question of whether a valid limited partnership was ever created. GP contends in the negative, arguing that the law[3] prohibits a party from acquiring a limited partnership interest when he makes no capital contribution whatsoever. LP argues the converse, contending that GP freely and willingly entered into the agreement on these terms and that no question of public policy arises because no third-party claimant is involved. He further argues that the law only requires substantial compliance with the limited partnership statute and that his performance met the substantial compliance standard. He also asserts the defenses of mutual mistake and estoppel. However, we do not reach these matters. We hold that a contract was formed between the parties and that it was supported by sufficient consideration to make it an enforceable agreement.[4] We further hold that

3. TEX.REV.CIV.STAT.ANN. art. 6132a (Vernon 1970) (Texas Uniform Limited Partnership Act), *superseded by* TEX.REV.CIV.STAT.ANN. art. 6132a–1 (Vernon Supp.1989) (Texas Revised Limited Partnership Act).

4. When the relationship between alleged partners is governed by a written partnership agreement, then, in the absence of some clear violation of public policy, it is the agreement which governs the rights of the parties; the statute will

even if, in contemplation of law, a limited partnership was never created, such fact acted no more to work a forfeiture of LP's share of the assets than it did to work a forfeiture of GP's share.

■ Even though LP's stated capital contribution was zero,[5] we note that GP's capital contribution was the merest of tokens. The venture contemplated the immediate acquisition of undeveloped property worth more than $1,000,000. Comparable additional sums would be needed for development. It follows that each $1,000 in borrowed funds was to be supported by no more than twenty-five cents, perhaps as little as ten cents, in permanent capital. For each one-percent share of the million-dollar-plus venture, GP contributed $3.33; LP's equivalent contribution would have been $83.33. We refuse to find such rectitude on the one side and lack thereof on the other to order that, for the want of $83.33, the ownership share of LP shall be forfeited to GP.

## FORMATION OF CONTRACT AND CONSIDERATION

■ Consideration for a contract may consist of either a benefit to the promisor or a detriment to the promisee. *E.g., Hovas v. O'Brien,* 654 S.W.2d 801, 803 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). *Compare Tigrett v. Heritage Bldg. Co.,* 533 S.W.2d 65, 69 (Tex.Civ.App.—Texarkana 1976, writ ref'd n.r.e.) (plaintiff received benefit; consideration sufficient) *with Henson v. Grayford Oil Corp.,* 549 S.W.2d 7, 11 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.) (plaintiff relied to his detriment; consideration sufficient). Further, a written instrument reciting a consideration imports one, and with such a recitation we

must presume the consideration was sufficient. *See Fourticq v. Firemans Fund Ins. Co.,* 679 S.W.2d 562, 566 (Tex.App.—Dallas 1984, no writ); *Buddy "L," Inc. v. General Trailer Co.,* 672 S.W.2d 541, 547 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). In this case, the "Limited Partnership Agreement" recited:

> For and in consideration of the mutual covenants herein contained, the parties do hereby form a limited partnership....

The same consideration supported all of the contractual agreements within the instrument. This mutual exchange of covenants, both express and implied, was sufficient to support the contractual undertakings, even if it was insufficient to create a limited partnership, a point that we do not address. The terms "capital contribution" and "consideration" relate to entirely different concepts, the latter being much broader.

One of the contractual undertakings was that all property acquired by and for the venture would be owned seventy-five percent by GP and twenty-five percent by LP. This provision conferred a benefit on both parties, and was an enforceable agreement by each party against the other.

Other consideration was furnished by LP through his implicit agreement to allow the sixty-two acres to be acquired by Partnership. He was in a position to prevent the sale of the sixty-two acres but, instead, he facilitated the acquisition. An agreement by LP to facilitate the transfer of this parcel was implicit in the contract creating the venture. Without LP's cooperation, performance of the contractual provisions of the Limited Partnership Agreement would have been impossible from the outset.

be consulted only where the agreement is silent. *See Park Cities Corp. v. Byrd,* 534 S.W.2d 668, 672 (Tex.1976); *Dobson v. Dobson,* 594 S.W.2d 177, 180 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.).

**5.** We acknowledge that the Texas Uniform Partnership Act, which is applicable to the form of business organization attempted by these parties, provides only that "contributions of a limited partner may be cash or other property, ..." TEX.REV.CIV.STAT.ANN. art. 6132a, § 5 (Ver-

non 1970). The 1987 Texas Revised Limited Partnership Act, although effective after this partnership was created, provides us with some interpretation of this provision. Section 5 remains essentially the same in the revised act, and the comment to that section states, "Nothing in TRLPA explicitly requires a limited partner to make a contribution, although [certain provisions] contemplate that he or she will do so." TEX.REV.CIV.STAT.ANN. art. 6132a–1, § 5.01, comment (Vernon Supp.1989).

We next point to the fact that in the capacity of seller, LP signed the real estate sales contract relating to the thirty-four acres, and necessarily undertook to do so in connection with the Limited Partnership Agreement. LP's contemporaneous implied agreement, to enter into a contract of sale with the contemplated partnership, again provided consideration for the contractual provisions of the partnership agreement. If Partnership had been able to secure financing, it could have enforced its contract against LP and could have acquired the second parcel. At the most, GP's summary judgment evidence only raises a fact issue concerning a possible subsequent breach of contract by LP in failing to locate financing suitable to Partnership's purposes.

The point to be made is axiomatic—consideration for a contract must precede any breach of contract. *See Fourticq,* 679 S.W.2d at 564; *Moore & Moore Drilling Co. v. White,* 345 S.W.2d 550, 556 (Tex.Civ. App.—Dallas 1961, writ ref'd n.r.e.). Any contention that LP breached the contract between the parties necessarily assumes that the contract was supported by consideration. We conclude that LP provided sufficient consideration to make the contract into a legally enforceable agreement, at least insofar as the contractual undertakings were concerned.

## REVERSION OF ASSETS

■ When the charter of a corporation is revoked or forfeited, the assets of the endeavor are not forfeited to the state, nor are they forfeited to the officers, directors, or majority shareholders. Those assets must be liquidated and distributed, first to creditors and then to the former shareholders. TEX.BUS.CORP.ACT ANN. art. 6.04(A)(3) (Vernon Supp.1989). *See also A.R. Clark Inv. Co. v. Green,* 375 S.W.2d 425, 436 (Tex.1964). Likewise, if for some reason, a proposed corporation fails to receive a valid charter, the assets must be liquidated and returned to the subscribers. *Cf. Davis v. Allison,* 109 Tex. 440, 211 S.W. 980, 983 (1919) (prohibited corporation never came into legal existence; thus, it had no powers and its stock subscriptions

were unenforceable). The same rules must be applied here with respect to the assets of this attempted limited partnership. Therefore, the trial court erred in granting a summary judgment declaring that all assets reverted to the GP. We so hold without reaching the question of the validity *vel non* of the limited partnership.

LP filed a counterclaim seeking the dissolution of the venture contracted between himself and GP. Nothing in GP's summary judgment evidence shows, as a matter of law, that LP was not entitled to such relief. We go no further in passing upon the allegations and evidence relating to the counterclaim because LP filed no cross-motion for summary judgment.

For the reasons recited, GP's motion for summary judgment was improvidently granted. We reverse and remand for further proceedings not inconsistent with this opinion.