COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-08-255-CV

 

 

PARKER
COUNTY=S SQUAW                                                APPELLANTS

CREEK DOWNS, L.P. AND 

JAMES R. DUNNAGAN

 

V.

 

JOSEPH
EARL WATSON, LARRY                                             APPELLEES

C. LAWLEY, AND JAMES R. 

DUNNAGAN AND JOSEPH 

EARL WATSON

 

                                              ------------

 

             FROM THE 43RD
DISTRICT COURT OF PARKER COUNTY

 

                                              ------------

                                                 AND

                                              ------------

 

                                        NO.
2-08-354-CV

 

IN
RE JAMES R. DUNNAGAN                                                    RELATOR

 

                                              ------------

 

                                    ORIGINAL
PROCEEDING

 

                                              ------------

                                MEMORANDUM OPINION[1]

                                              ------------








                                          I.  INTRODUCTION

Appellants Parker County=s Squaw
Creek Downs, L.P. (Athe limited partnership@) and
James R. Dunnagan separately appeal the trial court=s orders
appointing a receiver to wind up the limited partnership=s
affairs and ruling that the limited partnership=s
attorney has no authority to act on behalf of the limited partnership.  Dunnagan also filed a petition for writ of
mandamus seeking relief from the same challenged orders.  Appellee Joseph Earl Watson filed motions to
dismiss the appeals of Dunnagan and the limited partnership.  We consolidated the appeals, cause no.
2-08-255-CV, with the original proceeding, cause no. 2-08-354-CV.  Because we hold that the trial court abused
its discretion by appointing a receiver to wind up the limited partnership=s
affairs, we conditionally grant Dunnagan relief in the mandamus
proceeding.  We dismiss the appeals and
Watson=s
motions to dismiss the appeals as moot.

                                          II.  BACKGROUND

In September 1997, Dunnagan, Watson, and Appellee
Larry C. Lawley entered into a limited partnership agreement as limited
partners for the purpose of acquiring, holding, managing, and operating the
former Trinity Meadows horse racing facility in Willow Park, Parker
County.  Parker County III, Inc. (APC III@), a
Texas corporation, served as the limited partnership=s
general partner.








In 2001, litigation ensued between Dunnagan,
Watson, Lawley, and the limited partnership. 
A jury subsequently found that Watson had breached fiduciary duties owed
to the limited partnership, that Dunnagan had not breached fiduciary duties
owed to the limited partnership, and that Dunnagan=s
actions rendered it not practicable for the limited partnership to
continue.  The trial court entered
judgment on the verdict, which, among other things, ordered that the limited
partnership be dissolved.

Both Dunnagan and Watson appealed the trial court=s 2004
judgment.  This court affirmed the trial
court=s
judgment, and the Supreme Court of Texas denied the petition for review.  See Dunnagan v. Watson, 204 S.W.3d 30
(Tex. App.CFort Worth 2006, pet.
denied).  Mandate issued on April 10,
2007.








Watson filed an AApplication
to Wind Up Partnership and for Appointment of a Person to Wind up Partnership@ in
October 2006, but the trial court did not hold a hearing on Watson=s
application until May 31, 2007.  On May
7, 2007, before the hearing on Watson=s request
to appoint a receiver, the shareholders of PC III voted to dissolve the limited
partnership in accordance with section 11:5 of the limited partnership
agreement, which is titled ADistributions
in Kind.@  Shortly thereafter, on May 17, 2007, at a
special directors' meeting of PC III, the directors Aunanimously
adopted a Liquidation Statement dividing the assets and debts of the [l]imited
partnership in-kind, . . . authorized [Dunnagan] as President of
[PC III] to execute the necessary documents to accomplish the dissolution,@ and
distributed the property and the debts of the limited partnership in kind.

On May 28, 2008, the trial court signed the order
appointing a receiver about which Dunnagan and the limited partnership now
complain.  Pursuant to the May 28, 2008
order, the trial court found, among other things, that A[g]ood
cause exists for the appointment of a Receiver or Liquidating Trustee@ and
that the A[limited partnership] is in need
of a Receiver or Liquidating Trustee to wind up the [limited partnership=s]
affairs in an orderly and expeditious fashion.@  The order appointed Mark C. Hill as receiver
of and for the limited partnership.

On July 3, 2008, the trial court signed an AOrder on
Motion to Strike Notice of Appeal and to Show Authority Under Rule 12, Tex. R.
Civ. P.@
ordering that ADavid Cook, Esq., has no
authority to act on behalf of [the limited partnership] since entry of this
Court=s@ order
appointing a receiver and ordering that Aall
pleadings filed by Mr. Cook on behalf of [the limited partnership] after May 28th,
2008 are stricken, set aside and held for naught.@  Both the limited partnership and Dunnagan
filed notices of appeal challenging this July 3, 2008 order.








                                           III.  MOOTNESS

In the first issue in his petition for writ of
mandamus, Dunnagan argues that Watson=s
request for a court-appointed receiver to wind up the affairs of the limited
partnership was rendered moot when PC III liquidated the assets and liabilities
of the limited partnership after the 2004 judgment became final by carrying out
an authorized in-kind distribution pursuant to section 11:5 of the limited
partnership agreement.  Because the
section 11:5 in-kind distribution rendered moot Watson=s
request for a court-appointed receiver, according to Dunnagan, the trial court
lacked subject matter jurisdiction to enter the May 28, 2008 order appointing a
receiver to wind up the limited partnership=s
affairs.  And because the trial court
lacked subject matter jurisdiction to enter the order, the order is void and
constitutes an abuse of discretion warranting mandamus relief.  Watson contends that PC III did not exist
when it distributed in kind the limited partnership=s assets
and liabilities and, alternatively, that the trial court entered the May 28,
2008 order to enforce its 2004 judgment.








Generally, mandamus relief is proper only to
correct a clear abuse of discretion when there is no adequate remedy by
appeal.  In re Prudential Ins. Co. of
Am., 148 S.W.3d 124, 135B36 (Tex.
2004) (orig. proceeding).  Mandamus will
also lie to correct a void order, i.e., an order that the trial court had no
power or jurisdiction to enter.  In re
Ashton, 266 S.W.3d 602, 604 (Tex. App.CDallas
2008, orig. proceeding); In re Hancock, 212 S.W.3d 922, 926 (Tex. App.CFort
Worth 2007, orig. proceeding).  The
issuance of a void order is thus an abuse of discretion.  In re Sw. Bell Tel. Co., 35 S.W.3d
602, 605 (Tex. 2000) (orig. proceeding). 
When an order is adjudged to be void, a relator need not also show the
lack of an adequate remedy by appeal.  Id.;
Ashton, 266 S.W.3d at 604.








It is fundamental that a court must have
jurisdiction over the parties and the subject matter before it or else any
judgment it renders is void.  Crawford
v. State, 153 S.W.3d 497, 500 (Tex. App.CAmarillo
2004, no pet.); see also Mapco, Inc. v. Forrest, 795 S.W.2d 700, 703
(Tex. 1990) (providing that any judicial action by a court without jurisdiction
is void).  Absence of mootness is a
component of subject-matter jurisdiction. 
State Bar of Tex. v. Gomez, 891 S.W.2d 243, 244 (Tex. 1994); Black
v. Jackson, 82 S.W.3d 44, 51B52 (Tex.
App.CTyler
2002, no pet.); see also Joachim v. Travelers Ins. Co., No.
07-06-0322-CV, 2008 WL 4367872, at *3 (Tex. App.CAmarillo
September 28, 2008, pet. filed) (stating that a moot case lacks
justiciability).  A case becomes moot if
a controversy ceases to exist between the parties at any stage of the legal
proceedings.  In re Kellogg Brown
& Root, Inc., 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding).  In other words, a case becomes moot, and thus
unreviewable, when one seeks to obtain relief on some alleged controversy when
in reality none exists, or on some matter that, when granted, cannot have any
practical legal effect on a then-existing controversy.  See In re Guerra, 235 S.W.3d 392, 433
n.198 (Tex. App.CCorpus Christi 2007, orig.
proceeding); see also In re H&R Block Fin. Advisors, Inc., 262
S.W.3d 896, 900 (Tex. App.CHouston
[14th Dist.] 2008, orig. proceeding). 
Thus, if the controversy between the parties becomes moot, it is no
longer live; this destroys subject-matter jurisdiction, and any ruling by the
court is impermissibly advisory and therefore void.  Valley Baptist Med. Ctr. v. Gonzalez,
33 S.W.3d 821, 822 (Tex. 2000).








Section 8.02(2) of the Texas Revised Limited
Partnership Act (ATRLPA@)
provides that a court may decree dissolution of a limited partnership if it is
determined that Aanother partner has engaged in
conduct relating to the limited partnership business that makes it not reasonably
practicable to carry on the business in limited partnership with that partner.@  Tex. Rev. Civ. Stat. Ann. art. 6132aB1, ' 8.02(2)
(Vernon Supp. 2008).  Watson asserted a
claim for judicial dissolution of the limited partnership in his second amended
original petition, averring that ADunnagan=s conduct
has been such as to render it no longer practicable for [Watson] and Defendant
Dunnagan to continue as partners.@  At the 2003 trial, the trial court=s jury
question number eight tracked most of the language of section 8.02(2) and
asked, ADo you
find that the actions of James R. Dunnagan rendered it not practicable for [the
limited partnership] to continue?@  The jury answered, AYes.@  The trial court=s 2004
judgment consequently ordered that the limited partnership Abe
dissolved in accordance with the Limited Partnership Agreement of Parker County=s Squaw
Creek Downs, L.P., and those applicable provisions of the Texas Limited
Partnership Act.@

When the relationship among partners is governed
by a written partnership agreement, the agreement governs the rights of the
parties.  Hoagland v. Finholt, 773
S.W.2d 740, 743 n.4 (Tex. App.CDallas
1989, no writ).  We construe the limited
partnership agreement under the law of contracts.  Park Cities Corp. v. Byrd, 534 S.W.2d
668, 672 (Tex. 1976); see Bird v. Lubricants, USA, LP, No.
02-06-00061-CV, 2007 WL 2460352, at *3 (Tex. App.CFort
Worth Aug. 31, 2007, pet. denied) (mem. op.) (setting forth contract
construction rules).








Article XI of the limited partnership agreement,
titled ADissolution
and Liquidation of the Partnership,@ allows
for two types of ADistributions@ to be
made in the event of dissolution:  ADistributions
in Liquidation@ and ADistributions
in Kind.@  ADistribution
in Liquidation,@ section 11:3 of the limited
partnership agreement, provides that upon dissolution of the limited
partnership, Athe General Partner shall take
full account of the Partnership Property and liabilities, the Partnership
Property shall be liquidated (subject to Sec. 11:5 hereof) as promptly as is
consistent with obtaining fair value therefore, and the proceeds therefrom . .
. shall be applied and distributed . . . .@  ADistribution
in Kind,@ section
11:5 of the limited partnership agreement, provides in relevant part, AIn the
event a distribution of Partnership Property in kind is made, such property
shall be . . . (2) transferred and conveyed to the Partners
on a property-by-property basis, as determined by the General Partner in such
Partner=s sole
and absolute discretion.@ 
Section 11:5 further provides, ANotwithstanding
anything to the contrary herein contained, distributions in kind are expressly
authorized to such extent and in such manner as the General Partner determines
in such Partner=s sole and absolute discretion .
. . .@








On May 7, 2007, the shareholders of PC III voted
to dissolve the limited partnership in accordance with section 11:5 of the
limited partnership agreement.  Shortly
thereafter, on May 17, 2007, the directors of PC III distributed in kind the
limited partnership=s property, assets, and liabilities
pursuant to section 11:5 of the limited partnership agreement.  Specifically, by warranty deeds dated May 18,
2007, the limited partnership distributed its real estate to Dunnagan, Watson,
and Lawley.[2]  The limited partnership also assigned to
Dunnagan all of the limited partnership=s
personal property, including all claims, liabilities, causes of action, debts,
or notes for which the limited partnership is liable, and it assigned to Watson
(pursuant to an AAssignment of Judgment@) the
judgment that the limited partnership obtained against Watson resulting from
the 2003 trial.[3]  In accordance with section 11:7 of the
limited partnership, all of the limited partners were sent a ALiquidation
Statement,@ which set forth Awhat was
to be distributed in kind to each of the Limited Partners.@[4]













PC III thus performed an in-kind distribution of
the limited partnership=s assets and liabilities as
authorized by section 11:5 of Article XI of the limited partnership
agreement.  Watson complains about the
manner in which PC III distributed in kind the limited partnership=s assets
and liabilities, but section 11:5 of the limited partnership agreement provides
that Adistributions
in kind are expressly authorized to such extent and in such manner as the
General Partner determines in such Partner=s sole
discretion.@ 
To the extent Watson contends that section 11:3 controls dissolution of
the limited partnership, there is no provision in Article XI of the limited
partnership agreement requiring that dissolution of the limited partnership
proceed pursuant to the distributions in liquidation provision in section 11:3
instead of the distributions in kind provision in section 11:5.  Section 11:3 is also expressly subject to
section 11:5.  Further, there is no
provision in Article XI triggering the TRLPA=s
section 8.04(a) winding up procedures to the exclusion of section 11:5.[5]  To the extent Watson contends that section
8.04(a) of the TRLPA governs dissolution of the limited partnership, section
8.04(a) begins by stating, AExcept
as provided in the partnership agreement . . . .@  See Tex. Rev. Civ. Stat. Ann.
art. 6132aB1, ' 8.04(a).  TRLPA=s
section 8.04(a) winding up procedures are expressly subject to the limited
partnership agreement=s section 11:5 distribution in
kind procedure.[6]








Part 2(a)B(l)
of the trial court=s May 28, 2008 order sets forth
actions that the receiver is authorized and directed to take in relation to his
duties as receiver for the limited partnership, including taking immediate
possession of the assets of the limited partnership; gathering and collecting
all limited partnership property; selling, transferring, assigning, or
conveying to any person or entity any and all of the limited partnership
property; and obtaining and maintaining insurance coverage on any of the limited
partnership property.  All of theses
actions, however, are unnecessary and impossible to achieve because the limited
partnership was dissolved in accordance with the terms of the limited
partnership agreement and those applicable provisions of the TRLPA (which,
under these circumstances, are none) before the trial court=s
hearing on Watson=s application to appoint a
receiver and before the trial court signed its May 28, 2008 order appointing a
receiver to wind up the limited partnership=s
affairs.  The section 11:5 distribution
in kind thus rendered moot Watson=s
request for the appointment of a receiver or liquidating trustee.  See Guerra, 235 S.W.3d at 433 n.198; see
also H&R Block Fin. Advisors, Inc., 262 S.W.3d at 900 (stating that Aan issue
may be moot if it becomes impossible for the court to grant effectual relief
for any reason@).








Watson argues that PC III did not exist when it
distributed in kind the limited partnership=s assets
and liabilities because it forfeited its corporate existence for failure to pay
its franchise taxes before the trial court entered its September 2004
judgment.  Chapter 171 of the tax code is
titled AFranchise
Tax.@  See Tex. Tax Code Ann. ch. 171
(Vernon 2008).  Subchapter G of chapter
171 is titled, AForfeiture of Charter or
Certificate of Authority.@ 
Id. '' 171.301B.317.  Section 171.301 provides that it is a ground
for the forfeiture of a corporation=s
charter or certificate of authority if the corporate privileges of the
corporation are forfeited under this chapter and the corporation does not pay,
within 120 days after the date the corporate privileges are forfeited, the
amount necessary for the corporation to revive under this chapter its corporate
privileges.  Id. ' 171.301(1).  Under section 171.302, after the 120th day
after the date that the corporate privileges of a corporation are forfeited
under this chapter, the comptroller is required to certify the name of the
corporation to the attorney general and to the secretary of state.  Id. ' 171.302.  The secretary of state is then permitted to
forfeit the corporate charter if (1) the secretary receives the comptroller=s
certification under section 171.302 and (2) the taxable entity does not revive
its forfeited privileges within 120 days after the date the privileges were
forfeited.  Id. '
171.309.

These procedures were utilized in this case.  Watson directs us to a Aforfeiture
order@ titled AForfeiture
pursuant to Section 171.309 of the Texas Tax Code of [PC III].@[7]  It provides, AThe
Secretary of State received certification from the Comptroller of Public
Accounts under Section 171.302 of the Texas Tax Code that there are grounds for
forfeiture of the charter or certificate of authority of@ PC
III.  The order continues, A[PC III]
has not revived its forfeited corporate privileges within 120 days after the
date that the corporation privileges were forfeited.@  It then orders that PC III=s Acharter
or certificate of authority . . . be forfeited without judicial ascertainment
and that the proper entry be made upon the permanent files and records of [PC
III] to show such forfeiture as of [February 13, 2004].








The tax code, however, allows a corporation whose
charter is forfeited by the secretary of state to have its charter and
corporate privileges revived if the corporation files the required reports;
pays any taxes, penalties, and interest owed; and has the secretary of state
set aside the forfeiture pursuant to a section 171.313 proceeding.  See id. ' 171.312.  Dunnagan says that this Ais
exactly what has happened in the instant case,@ and we
agree.  He directs us to a ACertificate
of Filing@ that states the following:

The undersigned, as
Secretary of State of Texas, hereby certifies that the application for
reinstatement for the above named entity has been received in this office and
has been found to conform to law.  It is
further certified that the entity has been reinstated to active status on the
records of this office.

 

ACCORDINGLY the
undersigned, as Secretary of State, and by virtue of the authority vested in
the Secretary by law hereby issues this Certificate of Filing.

 

Dated: 10/06/2008

Effective: 10/06/2008 

Thus, PC III revived its previously forfeited corporate charter.








Neither the forfeiture of corporate privileges by
the comptroller nor the forfeiture of a corporation=s
charter by the secretary of state extinguishes the corporation as an
entity.  See Hinkle v. Adams, 74
S.W.3d 189, 193 (Tex. App.CTexarkana
2002, no pet.); Lighthouse Church of Cloverleaf v. Tex. Bank, 889 S.W.2d
595, 601 (Tex. App.CHouston [14th Dist.] 1994, writ
denied).  Moreover, if a corporation
files its delinquent reports and pays its delinquent franchise taxes, its
corporate privileges and charter are retroactively reinstated.  Hinkle, 74 S.W.3d at 193B94.  Because PC III revived its corporate charter,
it is as though the forfeiture never existed. 
Contrary to Watson=s argument, PC III existed when
it distributed in kind the limited partnership=s assets
and liabilities.








Watson also argues that the trial court entered
the May 28, 2008 order to enforce its 2004 judgment.[8]  But as explained above, it was unnecessary
for the trial court to enforce its own judgment by entry of the May 28, 2008
order (which occurred after the trial court=s
plenary power had expired) because PC III had conducted an authorized
distribution in kind of the limited partnership=s assets
and liabilities before the trial court entered the order, thus rendering moot
Watson=s
request to appoint a receiver.  Moreover,
the trial court=s order appointing a receiver is
impermissibly inconsistent with its original, 2004 judgment because the order
limits the method by which the limited partnership may be dissolved: the order
appoints a receiver to liquidate the limited partnership, which has the effect
of prohibiting the limited partnership from being dissolved pursuant to section
11:5 of the limited partnership agreement, which conflicts with the portion of
the 2004 judgment requiring that the limited partnership Abe
dissolved in accordance with the Limited Partnership Agreement of Parker County=s Squaw
Creek Downs, L.P., and those applicable provisions of the Texas Limited
Partnership Act.@ 
See Custom Corporates, Inc. v. Security Storage, Inc., 207 S.W.3d
835, 839 (Tex. App.CHouston [14th Dist.] 2006, no
pet.) (AThe
trial court may not . . . issue an order that is inconsistent with the original
judgment or that otherwise constitutes >a
material change in the substantive adjudicative portions of the judgment= after
its plenary power had expired.@).

Because the in-kind distribution rendered moot
Watson=s
request to appoint a receiver, the trial court lacked subject matter
jurisdiction to enter the May 28, 2008 order. 
See Gonzalez, 33 S.W.3d at 822. 
The May 28, 2008 order is therefore void, and we hold that the trial
court clearly abused its discretion by entering the void order.  See Sw. Bell Tel. Co., 35 S.W.3d at
605; Gonzalez, 33 S.W.3d at 822. 
We sustain the first issue in Dunnagan=s
petition for writ of mandamus.

                                          IV.  CONCLUSION








Dunnagan does not have to show that he has no
adequate remedy by appeal.  See Sw.
Bell Tel. Co., 35 S.W.3d at 605; Ashton, 266 S.W.3d at 604.  Having held that the May 28, 2008 order is
void, we conditionally grant Dunnagan mandamus relief and order the trial court
to vacate its May 28, 2008 order.  A writ
will issue only if the trial court fails to comply with this order.  Because the May 28, 2008 order is void, we
dismiss as moot the appeals of Dunnagan and the limited partnership challenging
the May 28, 2008 order, the appeals of Dunnagan and the limited partnership
challenging the trial court=s July
3, 2008 AOrder on
Motion to Strike Notice of Appeal and to Show Authority Under Rule 12, Tex. R.
Civ. P.,@ and
Watson=s
motions to dismiss the appeals of Dunnagan and the limited partnershipCall
consolidated under cause no. 2-08-255-CV. 
See Tex. R. App. P. 43.2(f); see generally In re Mask, 198
S.W.3d 231, 235 (Tex App.CSan Antonio 2006, orig.
proceeding) (stating that a void order has no force or effect and confers no
rights; it is a mere nullity).

 

 

DIXON
W. HOLMAN

JUSTICE

PANEL:  CAYCE, C.J.; LIVINGSTON, J.; and DIXON W.
HOLMAN (Senior Justice, Retired, Sitting by Assignment).

 

DELIVERED:  April 2, 2009











[1]See Tex. R. App. P. 47.4.





[2]For AConsideration,@ the deeds state,

 

An in-kind distribution upon dissolution as allowed by the Limited
Partnership Agreement of Parker County=s Squaw Creek Downs, L.P. . . . and requirements
of a Judgment dated the 17th day of February 2003, in Cause No.
49,072, entitled Joseph Earl Watson vs. Larry C. Lawley and James R.
Dunnagan, Parker County=s Squaw Creek Downs, L.P. vs. Joseph Earl Watson, in the 43rd
Judicial District Court of Parker County, Texas.





[3]The jury found that
Watson had failed to comply with his fiduciary duties owed to the limited
partnership, and it found that $459,645.69 would fairly and reasonably
compensate the limited partnership for its damages that were proximately caused
by Watson=s failure to comply with
his fiduciary duties.





[4]Section 11:7 provides in
part, AThe General Partner shall
furnish each of the Partners, at the Partnership=s expense, . . . a
statement which shall set forth the properties and liabilities of the
Partnership as of the date of final liquidation as herein provided.  Such statement shall also schedule the
receipts and disbursements made with respect to such liquidation . . . .@





[5]Section 8.04(a) of the
TRLPA, titled AWinding up,@ provides in part that Aa court of competent
jurisdiction . . . may appoint a person to carry out the liquidation . . . .@  Tex. Rev. Civ. Stat. Ann. art. 6132aB1, ' 8.04(a).





[6]This is entirely
consistent with the purpose of the TRLPA. The 
TRLPA=s ASource and Comment@ provides that A[l]ike most revised
statutes, TRLPA aims at modernization, clarification, coherence and
comprehensiveness.  But its overriding
objectives are flexibility and limited partner protection.@  Tex. Rev. Civ. Stat. Ann. art. 6132aB1, cmt.  AFlexibility is to give partners and drafters of
their agreements wide leeway to create structures and relationships tailored to
their financial, control, tax and other desires.  Flexibility is achieved largely through an
enhanced role for the partnership agreement . . . .@  Id.





[7]We take judicial notice
of the public records provided to this court by Watson and Dunnagan as they
relate to this issue.  See Office of
Pub. Util. Counsel v. Pub. Util. Comm=n of Tex., 878 S.W.2d 598, 600 (Tex. 1994).





[8]See Rapid Settlements,
Ltd. v. Symetra Life Ins. Co., 234 S.W.3d 788, 795 (Tex. App.CTyler 2007, no pet.)
(stating that a trial court has the power to enforce its judgments even after
its plenary power has expired, that this power is part of the court=s jurisdiction, and that
the court may employ suitable methods to enforce its jurisdiction); see also
Tex. Gov=t Code Ann. ' 21.001(a) (Vernon
2004); Tex. R. Civ. P. 308.