

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-255-CV

| | |
|---|---|
| PARKER COUNTY'S SQUAW CREEK DOWNS, L.P. AND JAMES R. DUNNAGAN | APPELLANTS |

V.

| | |
|---|---|
| JOSEPH EARL WATSON, LARRY C. LAWLEY, AND JAMES R. DUNNAGAN AND JOSEPH EARL WATSON | APPELLEES |

------------

### FROM THE 43RD DISTRICT COURT OF PARKER COUNTY

------------

AND

------------

### NO. 2-08-354-CV

| | |
|---|---|
| IN RE JAMES R. DUNNAGAN | RELATOR |

------------

ORIGINAL PROCEEDING

------------

## MEMORANDUM OPINION[1]

------------

---

[1] *See* Tex. R. App. P. 47.4.

## I. INTRODUCTION

Appellants Parker County's Squaw Creek Downs, L.P. ("the limited partnership") and James R. Dunnagan separately appeal the trial court's orders appointing a receiver to wind up the limited partnership's affairs and ruling that the limited partnership's attorney has no authority to act on behalf of the limited partnership. Dunnagan also filed a petition for writ of mandamus seeking relief from the same challenged orders. Appellee Joseph Earl Watson filed motions to dismiss the appeals of Dunnagan and the limited partnership. We consolidated the appeals, cause no. 2-08-255-CV, with the original proceeding, cause no. 2-08-354-CV. Because we hold that the trial court abused its discretion by appointing a receiver to wind up the limited partnership's affairs, we conditionally grant Dunnagan relief in the mandamus proceeding. We dismiss the appeals and Watson's motions to dismiss the appeals as moot.

## II. BACKGROUND

In September 1997, Dunnagan, Watson, and Appellee Larry C. Lawley entered into a limited partnership agreement as limited partners for the purpose of acquiring, holding, managing, and operating the former Trinity Meadows horse racing facility in Willow Park, Parker County. Parker County III, Inc. ("PC III"), a Texas corporation, served as the limited partnership's general partner.

In 2001, litigation ensued between Dunnagan, Watson, Lawley, and the limited partnership. A jury subsequently found that Watson had breached fiduciary duties owed to the limited partnership, that Dunnagan had not breached fiduciary duties owed to the limited partnership, and that Dunnagan's actions rendered it not practicable for the limited partnership to continue. The trial court entered judgment on the verdict, which, among other things, ordered that the limited partnership be dissolved.

Both Dunnagan and Watson appealed the trial court's 2004 judgment. This court affirmed the trial court's judgment, and the Supreme Court of Texas denied the petition for review. *See Dunnagan v. Watson*, 204 S.W.3d 30 (Tex. App.—Fort Worth 2006, pet. denied). Mandate issued on April 10, 2007.

Watson filed an "Application to Wind Up Partnership and for Appointment of a Person to Wind up Partnership" in October 2006, but the trial court did not hold a hearing on Watson's application until May 31, 2007. On May 7, 2007, before the hearing on Watson's request to appoint a receiver, the shareholders of PC III voted to dissolve the limited partnership in accordance with section 11:5 of the limited partnership agreement, which is titled "Distributions in Kind." Shortly thereafter, on May 17, 2007, at a special directors' meeting of PC III, the directors "unanimously adopted a Liquidation Statement dividing the assets and debts of the [l]imited partnership in-kind, . . . authorized [Dunnagan]

3

as President of [PC III] to execute the necessary documents to accomplish the dissolution," and distributed the property and the debts of the limited partnership in kind.

On May 28, 2008, the trial court signed the order appointing a receiver about which Dunnagan and the limited partnership now complain. Pursuant to the May 28, 2008 order, the trial court found, among other things, that "[g]ood cause exists for the appointment of a Receiver or Liquidating Trustee" and that the "[limited partnership] is in need of a Receiver or Liquidating Trustee to wind up the [limited partnership's] affairs in an orderly and expeditious fashion." The order appointed Mark C. Hill as receiver of and for the limited partnership.

On July 3, 2008, the trial court signed an "Order on Motion to Strike Notice of Appeal and to Show Authority Under Rule 12, Tex. R. Civ. P." ordering that "David Cook, Esq., has no authority to act on behalf of [the limited partnership] since entry of this Court's" order appointing a receiver and ordering that "all pleadings filed by Mr. Cook on behalf of [the limited partnership] after May 28th, 2008 are stricken, set aside and held for naught." Both the limited partnership and Dunnagan filed notices of appeal challenging this July 3, 2008 order.

### III. MOOTNESS

In the first issue in his petition for writ of mandamus, Dunnagan argues that Watson's request for a court-appointed receiver to wind up the affairs of the limited partnership was rendered moot when PC III liquidated the assets and liabilities of the limited partnership after the 2004 judgment became final by carrying out an authorized in-kind distribution pursuant to section 11:5 of the limited partnership agreement. Because the section 11:5 in-kind distribution rendered moot Watson's request for a court-appointed receiver, according to Dunnagan, the trial court lacked subject matter jurisdiction to enter the May 28, 2008 order appointing a receiver to wind up the limited partnership's affairs. And because the trial court lacked subject matter jurisdiction to enter the order, the order is void and constitutes an abuse of discretion warranting mandamus relief. Watson contends that PC III did not exist when it distributed in kind the limited partnership's assets and liabilities and, alternatively, that the trial court entered the May 28, 2008 order to enforce its 2004 judgment.

Generally, mandamus relief is proper only to correct a clear abuse of discretion when there is no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). Mandamus will also lie to correct a void order, i.e., an order that the trial court had no power or jurisdiction to enter. *In re Ashton*, 266 S.W.3d 602, 604

5

(Tex. App.—Dallas 2008, orig. proceeding); *In re Hancock*, 212 S.W.3d 922, 926 (Tex. App.—Fort Worth 2007, orig. proceeding).  The issuance of a void order is thus an abuse of discretion.  *In re Sw. Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000) (orig. proceeding).  When an order is adjudged to be void, a relator need not also show the lack of an adequate remedy by appeal.  *Id*.; *Ashton*, 266 S.W.3d at 604.

It is fundamental that a court must have jurisdiction over the parties and the subject matter before it or else any judgment it renders is void.  *Crawford v. State*, 153 S.W.3d 497, 500 (Tex. App.—Amarillo 2004, no pet.); *see also Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex. 1990) (providing that any judicial action by a court without jurisdiction is void).  Absence of mootness is a component of subject-matter jurisdiction.  *State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 244 (Tex. 1994); *Black v. Jackson*, 82 S.W.3d 44, 51–52 (Tex. App.—Tyler 2002, no pet.); *see also Joachim v. Travelers Ins. Co.*, No. 07-06-0322-CV, 2008 WL 4367872, at *3 (Tex. App.—Amarillo September 28, 2008, pet. filed) (stating that a moot case lacks justiciability).  A case becomes moot if a controversy ceases to exist between the parties at any stage of the legal proceedings*.  In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding).  In other words, a case becomes moot, and thus unreviewable, when one seeks to obtain relief on some alleged controversy

6

when in reality none exists, or on some matter that, when granted, cannot have any practical legal effect on a then-existing controversy. *See In re Guerra*, 235 S.W.3d 392, 433 n.198 (Tex. App.—Corpus Christi 2007, orig. proceeding); *see also In re H&R Block Fin. Advisors, Inc.*, 262 S.W.3d 896, 900 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding). Thus, if the controversy between the parties becomes moot, it is no longer live; this destroys subject-matter jurisdiction, and any ruling by the court is impermissibly advisory and therefore void. *Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000).

Section 8.02(2) of the Texas Revised Limited Partnership Act ("TRLPA") provides that a court may decree dissolution of a limited partnership if it is determined that "another partner has engaged in conduct relating to the limited partnership business that makes it not reasonably practicable to carry on the business in limited partnership with that partner." Tex. Rev. Civ. Stat. Ann. art. 6132a–1, § 8.02(2) (Vernon Supp. 2008). Watson asserted a claim for judicial dissolution of the limited partnership in his second amended original petition, averring that "Dunnagan's conduct has been such as to render it no longer practicable for [Watson] and Defendant Dunnagan to continue as partners." At the 2003 trial, the trial court's jury question number eight tracked most of the language of section 8.02(2) and asked, "Do you find that the actions of James

7

R. Dunnagan rendered it not practicable for [the limited partnership] to continue?" The jury answered, "Yes." The trial court's 2004 judgment consequently ordered that the limited partnership "be dissolved in accordance with the Limited Partnership Agreement of Parker County's Squaw Creek Downs, L.P., and those applicable provisions of the Texas Limited Partnership Act."

When the relationship among partners is governed by a written partnership agreement, the agreement governs the rights of the parties. *Hoagland v. Finholt*, 773 S.W.2d 740, 743 n.4 (Tex. App.—Dallas 1989, no writ). We construe the limited partnership agreement under the law of contracts. *Park Cities Corp. v. Byrd*, 534 S.W.2d 668, 672 (Tex. 1976); *see Bird v. Lubricants, USA, LP*, No. 02-06-00061-CV, 2007 WL 2460352, at *3 (Tex. App.—Fort Worth Aug. 31, 2007, pet. denied) (mem. op.) (setting forth contract construction rules).

Article XI of the limited partnership agreement, titled "Dissolution and Liquidation of the Partnership," allows for two types of "Distributions" to be made in the event of dissolution: "Distributions in Liquidation" and "Distributions in Kind." "Distribution in Liquidation," section 11:3 of the limited partnership agreement, provides that upon dissolution of the limited partnership, "the General Partner shall take full account of the Partnership Property and

8

liabilities, the Partnership Property shall be liquidated (subject to Sec. 11:5 hereof) as promptly as is consistent with obtaining fair value therefore, and the proceeds therefrom . . . shall be applied and distributed . . . ." "Distribution in Kind," section 11:5 of the limited partnership agreement, provides in relevant part, "In the event a distribution of Partnership Property in kind is made, such property shall be . . . (2) transferred and conveyed to the Partners on a property-by-property basis, as determined by the General Partner in such Partner's sole and absolute discretion." Section 11:5 further provides, "Notwithstanding anything to the contrary herein contained, distributions in kind are expressly authorized to such extent and in such manner as the General Partner determines in such Partner's sole and absolute discretion . . . ."

On May 7, 2007, the shareholders of PC III voted to dissolve the limited partnership in accordance with section 11:5 of the limited partnership agreement. Shortly thereafter, on May 17, 2007, the directors of PC III distributed in kind the limited partnership's property, assets, and liabilities pursuant to section 11:5 of the limited partnership agreement. Specifically, by warranty deeds dated May 18, 2007, the limited partnership distributed its real estate to Dunnagan, Watson, and Lawley.[2] The limited partnership also

---

[2] For "Consideration," the deeds state,

9

assigned to Dunnagan all of the limited partnership's personal property, including all claims, liabilities, causes of action, debts, or notes for which the limited partnership is liable, and it assigned to Watson (pursuant to an "Assignment of Judgment") the judgment that the limited partnership obtained against Watson resulting from the 2003 trial.[3] In accordance with section 11:7 of the limited partnership, all of the limited partners were sent a "Liquidation Statement," which set forth "what was to be distributed in kind to each of the Limited Partners."[4]

PC III thus performed an in-kind distribution of the limited partnership's assets and liabilities as authorized by section 11:5 of Article XI of the limited

---

An in-kind distribution upon dissolution as allowed by the Limited Partnership Agreement of Parker County's Squaw Creek Downs, L.P. . . . and requirements of a Judgment dated the 17th day of February 2003, in Cause No. 49,072, entitled *Joseph Earl Watson vs. Larry C. Lawley and James R. Dunnagan, Parker County's Squaw Creek Downs, L.P. vs. Joseph Earl Watson*, in the 43rd Judicial District Court of Parker County, Texas.

[3] The jury found that Watson had failed to comply with his fiduciary duties owed to the limited partnership, and it found that $459,645.69 would fairly and reasonably compensate the limited partnership for its damages that were proximately caused by Watson's failure to comply with his fiduciary duties.

[4] Section 11:7 provides in part, "The General Partner shall furnish each of the Partners, at the Partnership's expense, . . . a statement which shall set forth the properties and liabilities of the Partnership as of the date of final liquidation as herein provided. Such statement shall also schedule the receipts and disbursements made with respect to such liquidation . . . ."

10

partnership agreement.  Watson complains about the manner in which PC III distributed in kind the limited partnership's assets and liabilities, but section 11:5 of the limited partnership agreement provides that "distributions in kind are expressly authorized to such extent and in such manner as the General Partner determines in such Partner's sole discretion."  To the extent Watson contends that section 11:3 controls dissolution of the limited partnership, there is no provision in Article XI of the limited partnership agreement requiring that dissolution of the limited partnership proceed pursuant to the distributions in liquidation provision in section 11:3 instead of the distributions in kind provision in section 11:5.  Section 11:3 is also expressly subject to section 11:5. Further, there is no provision in Article XI triggering the TRLPA's section 8.04(a) winding up procedures to the exclusion of section 11:5.[5] To the extent Watson contends that section 8.04(a) of the TRLPA governs dissolution of the limited partnership, section 8.04(a) begins by stating, "Except as provided in the partnership agreement . . . ."  *See* Tex. Rev. Civ. Stat. Ann. art. 6132a–1, § 8.04(a).  TRLPA's section 8.04(a) winding up procedures are expressly

---

[5] Section 8.04(a) of the TRLPA, titled "Winding up," provides in part that "a court of competent jurisdiction . . . may appoint a person to carry out the liquidation . . . ."  Tex. Rev. Civ. Stat. Ann. art. 6132a–1, § 8.04(a).

11

subject to the limited partnership agreement's section 11:5 distribution in kind procedure.[6]

Part 2(a)–(*l*) of the trial court's May 28, 2008 order sets forth actions that the receiver is authorized and directed to take in relation to his duties as receiver for the limited partnership, including taking immediate possession of the assets of the limited partnership; gathering and collecting all limited partnership property; selling, transferring, assigning, or conveying to any person or entity any and all of the limited partnership property; and obtaining and maintaining insurance coverage on any of the limited partnership property. All of theses actions, however, are unnecessary and impossible to achieve because the limited partnership was dissolved in accordance with the terms of the limited partnership agreement and those applicable provisions of the TRLPA (which, under these circumstances, are none) before the trial court's hearing on Watson's application to appoint a receiver and before the trial court signed its May 28, 2008 order appointing a receiver to wind up the limited partnership's

---

[6] This is entirely consistent with the purpose of the TRLPA. The TRLPA's "Source and Comment" provides that "[l]ike most revised statutes, TRLPA aims at modernization, clarification, coherence and comprehensiveness. But its overriding objectives are flexibility and limited partner protection." Tex. Rev. Civ. Stat. Ann. art. 6132a–1, cmt. "Flexibility is to give partners and drafters of their agreements wide leeway to create structures and relationships tailored to their financial, control, tax and other desires. Flexibility is achieved largely through an enhanced role for the partnership agreement . . . ." *Id*.

affairs. The section 11:5 distribution in kind thus rendered moot Watson's request for the appointment of a receiver or liquidating trustee. *See Guerra*, 235 S.W.3d at 433 n.198; *see also H&R Block Fin. Advisors, Inc.*, 262 S.W.3d at 900 (stating that "an issue may be moot if it becomes impossible for the court to grant effectual relief for any reason").

Watson argues that PC III did not exist when it distributed in kind the limited partnership's assets and liabilities because it forfeited its corporate existence for failure to pay its franchise taxes before the trial court entered its September 2004 judgment. Chapter 171 of the tax code is titled "Franchise Tax." *See* Tex. Tax Code Ann. ch. 171 (Vernon 2008). Subchapter G of chapter 171 is titled, "Forfeiture of Charter or Certificate of Authority." *Id*. §§ 171.301–.317. Section 171.301 provides that it is a ground for the forfeiture of a corporation's charter or certificate of authority if the corporate privileges of the corporation are forfeited under this chapter and the corporation does not pay, within 120 days after the date the corporate privileges are forfeited, the amount necessary for the corporation to revive under this chapter its corporate privileges. *Id*. § 171.301(1). Under section 171.302, after the 120th day after the date that the corporate privileges of a corporation are forfeited under this chapter, the comptroller is required to certify the name of the corporation to the attorney general and to the secretary of state. *Id*.

13

§ 171.302. The secretary of state is then permitted to forfeit the corporate charter if (1) the secretary receives the comptroller's certification under section 171.302 and (2) the taxable entity does not revive its forfeited privileges within 120 days after the date the privileges were forfeited. *Id*. § 171.309.

These procedures were utilized in this case. Watson directs us to a "forfeiture order" titled "Forfeiture pursuant to Section 171.309 of the Texas Tax Code of [PC III]."[7] It provides, "The Secretary of State received certification from the Comptroller of Public Accounts under Section 171.302 of the Texas Tax Code that there are grounds for forfeiture of the charter or certificate of authority of" PC III. The order continues, "[PC III] has not revived its forfeited corporate privileges within 120 days after the date that the corporation privileges were forfeited." It then orders that PC III's "charter or certificate of authority . . . be forfeited without judicial ascertainment and that the proper entry be made upon the permanent files and records of [PC III] to show such forfeiture as of [February 13, 2004].

The tax code, however, allows a corporation whose charter is forfeited by the secretary of state to have its charter and corporate privileges revived if

---

[7] We take judicial notice of the public records provided to this court by Watson and Dunnagan as they relate to this issue. *See Office of Pub. Util. Counsel v. Pub. Util. Comm'n of Tex.*, 878 S.W.2d 598, 600 (Tex. 1994).

the corporation files the required reports; pays any taxes, penalties, and interest owed; and has the secretary of state set aside the forfeiture pursuant to a section 171.313 proceeding. *See id*. § 171.312. Dunnagan says that this "is exactly what has happened in the instant case," and we agree. He directs us to a "Certificate of Filing" that states the following:

> The undersigned, as Secretary of State of Texas, hereby certifies that the application for reinstatement for the above named entity has been received in this office and has been found to conform to law. It is further certified that the entity has been reinstated to active status on the records of this office.
>
> ACCORDINGLY the undersigned, as Secretary of State, and by virtue of the authority vested in the Secretary by law hereby issues this Certificate of Filing.
>
> Dated: 10/06/2008
>
> Effective: 10/06/2008

Thus, PC III revived its previously forfeited corporate charter.

Neither the forfeiture of corporate privileges by the comptroller nor the forfeiture of a corporation's charter by the secretary of state extinguishes the corporation as an entity. *See Hinkle v. Adams*, 74 S.W.3d 189, 193 (Tex. App.—Texarkana 2002, no pet.); *Lighthouse Church of Cloverleaf v. Tex. Bank*, 889 S.W.2d 595, 601 (Tex. App.—Houston [14th Dist.] 1994, writ denied). Moreover, if a corporation files its delinquent reports and pays its delinquent franchise taxes, its corporate privileges and charter are retroactively reinstated.

15

*Hinkle*, 74 S.W.3d at 193–94. Because PC III revived its corporate charter, it is as though the forfeiture never existed. Contrary to Watson's argument, PC III existed when it distributed in kind the limited partnership's assets and liabilities.

Watson also argues that the trial court entered the May 28, 2008 order to enforce its 2004 judgment.[8] But as explained above, it was unnecessary for the trial court to enforce its own judgment by entry of the May 28, 2008 order (which occurred after the trial court's plenary power had expired) because PC III had conducted an authorized distribution in kind of the limited partnership's assets and liabilities before the trial court entered the order, thus rendering moot Watson's request to appoint a receiver. Moreover, the trial court's order appointing a receiver is impermissibly inconsistent with its original, 2004 judgment because the order limits the method by which the limited partnership may be dissolved: the order appoints a receiver to liquidate the limited partnership, which has the effect of prohibiting the limited partnership from being dissolved pursuant to section 11:5 of the limited partnership agreement,

---

[8] *See Rapid Settlements, Ltd. v. Symetra Life Ins. Co.*, 234 S.W.3d 788, 795 (Tex. App.— Tyler 2007, no pet.) (stating that a trial court has the power to enforce its judgments even after its plenary power has expired, that this power is part of the court's jurisdiction, and that the court may employ suitable methods to enforce its jurisdiction); *see also* Tex. Gov't Code Ann. § 21.001(a) (Vernon 2004); Tex. R. Civ. P. 308.

which conflicts with the portion of the 2004 judgment requiring that the limited partnership "be dissolved in accordance with the Limited Partnership Agreement of Parker County's Squaw Creek Downs, L.P., and those applicable provisions of the Texas Limited Partnership Act." *See Custom Corporates, Inc. v. Security Storage, Inc.*, 207 S.W.3d 835, 839 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ("The trial court may not . . . issue an order that is inconsistent with the original judgment or that otherwise constitutes 'a material change in the substantive adjudicative portions of the judgment' after its plenary power had expired.").

Because the in-kind distribution rendered moot Watson's request to appoint a receiver, the trial court lacked subject matter jurisdiction to enter the May 28, 2008 order. *See Gonzalez*, 33 S.W.3d at 822. The May 28, 2008 order is therefore void, and we hold that the trial court clearly abused its discretion by entering the void order. *See Sw. Bell Tel. Co.*, 35 S.W.3d at 605; *Gonzalez*, 33 S.W.3d at 822. We sustain the first issue in Dunnagan's petition for writ of mandamus.

## IV. CONCLUSION

Dunnagan does not have to show that he has no adequate remedy by appeal. *See Sw. Bell Tel. Co.*, 35 S.W.3d at 605; *Ashton*, 266 S.W.3d at 604. Having held that the May 28, 2008 order is void, we conditionally grant

17

Dunnagan mandamus relief and order the trial court to vacate its May 28, 2008 order. A writ will issue only if the trial court fails to comply with this order. Because the May 28, 2008 order is void, we dismiss as moot the appeals of Dunnagan and the limited partnership challenging the May 28, 2008 order, the appeals of Dunnagan and the limited partnership challenging the trial court's July 3, 2008 "Order on Motion to Strike Notice of Appeal and to Show Authority Under Rule 12, Tex. R. Civ. P.," and Watson's motions to dismiss the appeals of Dunnagan and the limited partnership—all consolidated under cause no. 2-08-255-CV. *See* Tex. R. App. P. 43.2(f); *see generally In re Mask*, 198 S.W.3d 231, 235 (Tex App.—San Antonio 2006, orig. proceeding) (stating that a void order has no force or effect and confers no rights; it is a mere nullity).

DIXON W. HOLMAN
JUSTICE

PANEL: CAYCE, C.J.; LIVINGSTON, J.; and DIXON W. HOLMAN (Senior Justice, Retired, Sitting by Assignment).

DELIVERED: April 2, 2009